SHANNAHAN et al. v. UNITED STATES.

No. 622.

District Court, N. D. Indiana, South Bend
Division.

Aug. 16, 1937.

Aaron H. Huguenard, of South Bend,
Ind., and John C. Lawyer, of Chicago, Ill.,
for plaintiff.

James R. Fleming, of Ft. Wayne, Ind.,
for defendant.

Before EVANS, Circuit Judge, and
BALTZELL and SLICK, District Judges.

EVANS, Circuit Judge, and BALT-
ZELL, District Judge.

On February 14, 1936, the Interstate
Commerce Commission filed its report in
writing which contained, among other
things, the following paragraph:

"We find that the line of the Chicago,
South Shore and South Bend Railroad is
not a street, interurban, or suburban elec-
tric railway within the meaning of the
exemption proviso in the first paragraph of
section 1 of the Railway Labor Act, as
amended June 21, 1934 [45 U.S.C.A. § 151]
and it is therefore subject to the provisions
of that act."

The report appears in 214 I.C.C. 167–
173.

Preceding this finding is a statement
which sets forth the proceedings of the
Interstate Commerce Commission and a ré-
sumé of the evidence received on the hear-
ing.

The petitioners brought suit against the
United States to enjoin, by temporary re-
straining order and interlocutory prelimi-
nary injunction, the "Interstate Commerce
Commission from making or entering the
aforesaid order, finding, and determination
that the line .of the Chicago South Shore
and South Bend Railroad is not a street,
interurban, or suburban electric railway
within the meaning of the exemption pro-
viso in the first paragraph of section 1 of
the Railway Labor Act, as amended, and
that said order be set aside, annulled and
suspended."

The Interstate Commerce Commission
intervened.

The determinative question is one of
jurisdiction.

Is the case one for the determination of
a three judge statutory court? The an-
swer to this question turns upon the char-

acter of the ruling which was made by the Interstate Commerce Commission.

■ A three judge statutory court is one of limited jurisdiction. Procter & Gamble Co. v. United States, 225 U.S. 282, 32 S.Ct. 761, 56 L.Ed. 1091; United States v. Atlanta, Birmingham & C. R. Co., 282 U.S. 522, 51 S.Ct. 237, 75 L.Ed. 513; United States v. Los Angeles & S. L. R. Co., 273 U.S. 299, 47 S.Ct. 413, 414, 71 L.Ed. 651; Great Northern Ry. Co. v. U. S., 277 U.S. 172, 48 S.Ct. 466, 72 L.Ed. 838; Pittsburgh & West Va. Ry. Co. v. U. S., 281 U.S. 479, 50 S.Ct. 378, 74 L.Ed. 980.

Its jurisdiction is limited to "cases brought to enjoin, set aside, annul, or suspend in whole or in part any order of the Interstate Commerce Commission." Section 207 of the Judicial Code, as amended, U.S.C. title 28, § 41 (27) and (28), 28 U. S.C.A. § 41 (27, 28).

We are therefore first called upon to determine whether the report of the Interstate Commerce Commission was an order of that body.

■ It may be readily conceded that it is not the name which the Commission gives to its action or to the document which evidences its action that determines whether it is a finding, a report, or an order. For example, the Interstate Commerce Commission may call an order a report or the report may call an order a finding. Likewise, counsel may call a finding an order or a conclusion, a finding. Courts are not interested in the names used, but in the action taken by the Interstate Commerce Commission.

The Supreme Court cases cited above apply to instances where a report was held not to contain an order. In United States v. Los Angeles & S. L. R. R. Co., supra, it is said:

"The final report on value, like the tentative report, is called an order. But there are many orders of the Commission which are not judicially reviewable under the provision now incorporated in the Urgent Deficiencies Act."

■ An examination of the entire report fails to show wherein the Interstate Commerce Commission made any order or direction to the carrier. It made a finding. Later it may make an order upon that finding. Likewise, it may modify its finding or withdraw it. Until an order, however, is made upon the finding, a three judge court is without jurisdiction to act. Such a court may "enjoin, set aside, annul, or suspend" only an *order* of the Interstate Commerce Commission.

■ Having no jurisdiction of the cause, it (a three judge court) cannot even determine whether an equitable cause of action is stated which may entitle the plaintiff to relief in the United States District Court for the Northern District of Indiana, South Bend Division. Such question is for the District Judge of that court to determine.

For the reasons stated this three judge statutory court must decline to take jurisdiction of the cause or grant the relief sought.

SLICK, District Judge (dissenting).

The matter involved in this controversy appears so important to me that, notwithstanding the great respect I have for the majority opinion filed by my worthy associate judges, I am constrained to briefly express my views in this dissenting opinion.

In United States et al. v. Los Angeles & Salt Lake Railroad Company, 273 U.S. 299, 47 S.Ct. 413, 71 L.Ed. 651, relied upon by defendants, the Supreme Court seems to fix a rule for determining the question of jurisdiction of a three judge court, depending upon whether the Interstate Commerce Commission in making its finding was exercising a quasi judicial function to determine controversies.

In this case the Interstate Commerce Commission functioned in a quasi judicial manner. The Railway Labor Act (45 U.S. C.A. § 151 et seq.) puts certain duties and obligations upon carriers, and, in defining "carriers," the act provides that there shall not be included any street, interurban, or suburban electric railway, unless such railway operates as part of a general steam railway system. The act authorizes and directs the Interstate Commerce Commission upon request of the Mediation Board to "determine after hearing whether any line operated by electric power falls within the terms of this proviso." The Mediation Board made such a request and this was in the nature, under the statute, of a suit. Notice was required and given. A hearing was had. Evidence was taken. Arguments were made and briefs filed. Then followed a final determination or order as follows: "We find that the line of the Chicago South Shore and South Bend Railroad is not a street, interurban or

suburban electric railway within the meaning of the exemption proviso in the first paragraph of section 1 of the Railway Labor Act as amended June 21, 1934 [45 U.S.C.A. § 151] and it is therefore subject to the provisions of that act."

In United States et al. v. Los Angeles & Salt Lake Railroad Company, supra, which involved an appraisal of property only, the court, in deciding that the case was not triable by a three judge court, said that the so-called order did not "grant or withhold any * * * privilege or license;" that the finding did not "extend or abridge any power or facility;" that the order did not "subject the carrier to any liability, civil or criminal;" that the finding did not "change the carrier's existing or future status or condition."

The finding or order in this case does withhold a privilege; that accorded electric interurbans to exemption from the operation of the Railway Labor Act. It does abridge the rights and powers of the Chicago South Shore & South Bend Railroad. It subjects the company to civil, possibly criminal, liability, and is so treated by the Mediation Board in demanding a compliance with the order. It changes the company's existing and future status from an electric interurban to a carrier, as defined under the Railway Labor Act, and determines the company's status and fastens upon it an obligation. It was in effect and, for the purpose of the hearing, an order fixing and determining the status of the company and deciding that the company is "subject to the provisions of the act."

The act of Congress giving this court jurisdiction does not define or limit the nature of an order to render it reviewable. The order here is the final determination and finding that the South Shore is a carrier, and that it is therefore subject to the provisions of the Railway Labor Act.

The proceeding before the Interstate Commerce Commission was an adversary one, contested, tried, and decided like any other suit. It was a quasi judicial proceeding fixing the status of the South Shore, fastening upon it certain obligations, rendering it subject to certain civil liabilities. What more could a final order do?

I cannot avoid the conclusion that here was an order within the intent and purpose of Congress, and that this three judge court has jurisdiction. "We find" that the company is not an electric interurban and "that it is subject to the provisions of the Railway Labor Act." How much stronger would it have been had the Interstate Commerce Commission preceded its final decree by the formal words usually found in a court order "it is therefore ordered"? The real meaning of the Commission's finding is that the plaintiff is not an electric railway, and that it comes under the provisions of the Railway Labor Act, and that it shall be governed accordingly and submit to the regulations of the Mediation Board.

If this is not an order affecting the existing and future status of the Chicago South Shore & South Bend Railroad, it is hard to understand what it really is. Equity does not regard form and should not regard technicalities. It looks through the form to discover the merits. The real merits of this controversy are whether or not the Chicago South Shore & South Bend Railroad is to be governed as a carrier and compelled to comply with all the requirements of the state and federal acts applicable to carriers, or whether it is in truth and in fact an electric interurban or suburban railway.

In my opinion the Interstate Commerce Commission was acting as a quasi judicial body in making this ruling and order, and that therefore this court has jurisdiction.