(No. 25062.—

SANTIAGO RODRIGUEZ, Defendant in Error, *vs.* THE INDUS-
TRIAL COMMISSION *et al.*—(THE CARNEGIE-ILLINOIS
STEEL CORPORATION, Plaintiff in Error.)

*Opinion filed June 19, 1939.*

KNAPP, ALLEN & CUSHING, (JOSEPH L. EARLYWINE, and HARLAN L. HACKBERT, of counsel,) for plaintiff in error.

SOL ANDREWS, for defendant in error.

Mr. Justice Farthing delivered the opinion of the court:

Santiago Rodriguez filed a claim for compensation under the provisions of the Workmen's Occupational Diseases act. He claimed he was suffering from an occupational disease caused by inhaling dust during the course of his employment with the Carnegie-Illinois Steel Company, plaintiff in error. After a hearing the arbitrator found that Rodriguez's disability arose out of and in the course of his employment and awarded compensation. A physician who had testified before the arbitrator was recalled before the Industrial Commission. After hearing oral arguments, the commission set aside the arbitrator's award and found the disability did not arise out of and in the course of Rodriguez's employment. On *certiorari* the circuit court of Cook county set aside this decision and entered the following order:

"This cause coming on to be heard on a writ of *certiorari* and the court having heard arguments of both sides and being fully advised in the premises, finds that the Industrial Commission heard no evidence in addition to the evidence heard on arbitration and therefore being in no better position to judge the weight of the evidence than this court should not have set aside and held for naught the decision of the arbitrator for the reason that the decision of the arbitrator was not contrary to the manifest weight of the evidence.

"Now Therefore, it is hereby ordered, adjudged, and decreed that the decision of the Industrial Commission in the above entitled cause setting aside and holding for naught the decision of the arbitrator be and the same is hereby set aside and the decision of the arbitrator affirmed."

We granted a petition for writ of error, and the cause is here for further review.

By its order the circuit court held that where all or substantially all of the evidence is heard by the arbitrator, the Industrial Commission has no power to set aside the deci-

sion of the arbitrator and make a contrary finding unless that decision is against the manifest weight of the evidence. The company contends that since the commission found the disability did not arise out of and in the course of the employment, the circuit court on writ of *certiorari,* and this court on writ of error, are limited to an examination of the record to determine whether that finding is against the manifest weight of the evidence. In other words, the company says only the decision of the commission is subject to judicial review; that the decision of the arbitrator is advisory and in no way binding on the commission.

The statute provides: "All questions arising under this act, if not settled by agreement of the parties interested therein, shall, except as otherwise provided, be determined by the Industrial Commission." (Ill. Rev. Stat. 1937, chap. 48, par. 172.18.) The exception referred to is that an arbitrator or arbitrators may be appointed (par. 172.19(a)) whose decision "shall become the decision of the Industrial Commission" if no petition for review is filed by either party within fifteen days after receipt of a copy of the decision. (par. 172.19(b)). However, in the case before us a petition for review and transcript of evidence was filed within the designated period, and in such case, the statute says "if a petition for review and * * * transcript of evidence is filed, as provided herein, the Industrial Commission shall promptly review the decision of the arbitrator * * * and all questions of law or fact which appear from the said * * * transcript of evidence, and such additional evidence as the parties may submit. After such hearing upon review, the commission shall file in its office its decision thereon" and notify the parties thereof. (par. 172.19(e)). By paragraph 172.19(f), "The decision of the Industrial Commission * * * shall, in the absence of fraud, be conclusive unless reviewed as * * * hereinafter provided." That paragraph then provides for a review of the decision of the Industrial Commission by writ

of *certiorari* to the commission. Therefore, under the provisions of the Workmen's Occupational Diseases act the decision of the commission, not of the arbitrator, is the significant finding. It is that decision which constitutes the award and is subject to judicial review. In cases under the Workmen's Compensation act which is similar to the Workmen's Occupational Diseases act, we have held that the function of the arbitrator is merely advisory. In *Pocahontas Mining Co.* v. *Industrial Com.* 301 Ill. 462, page 473, we said: "A review of an arbitrator's decision by the commission, as stated in the *Andrus case, supra,* is *sui generis,* since it is neither a review of the record made by the arbitrator nor a trial *de novo* but a combination of the two. The transcript of the record is to be reviewed by the commission, and the parties have the right to introduce further evidence, which, when taken and properly filed before the commission, must be also considered by it along with the evidence taken before the arbitrator. The jurisdiction of the commission to review the evidence before the arbitrator and to consider any further evidence properly presented to it is original jurisdiction as distinguished from appellate jurisdiction. As suggested by counsel for *amici curiae,* the Industrial Commission appoints the arbitrator, and the arbitrator in his consideration of the case is but the agent of the commission, similar in character to that of a master in chancery or a referee in bankruptcy, so far as the character of the functions performed by the arbitrator is concerned. The award of the arbitrator, like the report of the master in chancery, may become final by its entry upon the records of the commission, and does become final if it is not contested, but if it is contested before the commission the jurisdiction of the commission to review is original jurisdiction as certainly as the action of the circuit court in reviewing or passing upon the master's report and entering final decree is original jurisdiction." See, also, *City of Chicago* v. *Industrial Com.* 363 Ill. 298, 301; *Olson* v.

*Carlton,* 178 Minn. 34; *Rasmus v. Workmen's Compensation Appeal Board,* 117 W. Va. 55; *Fontaine's Case,* 246 Mass. 513.

In support of his contention that the decision of the arbitrator is not merely advisory, defendant in error cites *Illinois Bell Telephone Co. v. Industrial Com.* 325 Ill. 102, 109, but that case is not in point. We there held that the award of the commission was against the manifest weight of the evidence. We are of the opinion that regardless of whether the commission hears testimony in addition to that heard by the arbitrator, it exercises an original jurisdiction and is in no way bound in such case as this by the arbitrator's findings.

The remaining question, then, is whether the commission's finding that the disability did not arise out of and in the course of the employment is against the manifest weight of the evidence. This requires a consideration of the testimony, which is conflicting.

Rodriguez worked as a chipper for the steel company in the billet dock, a building about 900 feet long and 80 feet high. It is ventilated by windows which run the length of the east wall. These are usually kept open. The manufacturing process carried on there is the removal of scale and surface defects from steel billets. These billets vary in length from 10 to 12 feet, in width from 4 to 8 inches, and weigh from 375 to 2000 pounds. They are first "pickled" in vats containing a ten per cent solution of sulphuric acid, and then washed with water and steam to remove the scale. An inspector marks the surface defects. The chipper's job is to remove these defects with a chisel operated by compressed air supplied by an air gun. The chips chiseled off the billets are $\frac{3}{4}$ of an inch in width and from $\frac{3}{4}$ to 10 inches in length. There is nothing either in the pickling operation or the chipping which creates dust. The floor of the billet dock is composed of granulated cinders. Dust is raised when the doors in the east wall are opened or when

one of the air hoses bursts. Rodriguez testified that some dust was raised by the exhaust from the air hammer, but the arbitrator who visited the plant, found "the exhaust itself does not throw up any dust whatsoever." There was a conflict in the evidence as to how often an air hose burst. Rodriguez testified that an air hose would break two or three times a day and Chavez, a fellow employee, testified for Rodriguez that "every day there were one or two air hoses that would break, but they were immediately repaired." Witnesses for the steel company testified that an air hose would not burst more than once a month. When an air hose would burst the employee using that chipper would either shut off the valve or pick up the hose, and by doubling it back upon itself and slipping a ring over it, cut off the air. This took only a minute and the dust from the floor which had been raised by the current of air would soon settle. Rodriguez testified that he had never had an air hose he was using burst, and that when one near him broke he immediately ran away from the dust.

For the defendant in error, Dr. Louis K. Eastman, a general practitioner who had examined Rodriguez, testified that he had suffered marked destruction of the lung tissue. In answer to a hypothetical question he gave his opinion that there was a causal connection between the condition of the chest and Rodriguez's occupation due to the fact that he was "constantly working in the presence of dust." He testified that he could not name the condition of the man's lung and, upon cross-examination, refused to characterize the condition as tuberculosis, pneumonoconiosis or silicosis, and replied to all questions as to what was shown by the X-ray: "That picture shows destruction of the lungs."

On behalf of the respondent, Dr. Henry C. Sweany testified that he had been medical director of research for the Municipal Tuberculosis Sanitarium in Chicago since July, 1922. His duties at the sanitarium were to make diagnoses of tuberculosis patients who entered the institution, and he

had done a good deal of research work in cases where dust was found in the lungs. He examined Rodriguez and testified as to the symptoms which he found upon that examination and as to the conditions disclosed by the X-rays which had been taken. He testified that in his opinion Rodriguez "is suffering from pulmonary tuberculosis and has been for many years;" that "pulmonary tuberculosis is a disease of the human body caused by a microscopic parasite known as tubercular bacilli accumulating in various tissues, principally in the lungs" and that this disease can attack any one. In answer to a hypothetical question he testified that the conditions under which Rodriguez worked would in no way contribute or lead to his present physical condition. On review before a commissioner, Dr. Sweany again testified on behalf of defendant, reading an X-ray which had been submitted to him at the time of his examination of Rodriguez but which counsel for Rodriguez failed to produce at the hearing before the arbitrator. Dr. Sweany again testified that his diagnosis of Rodriguez's condition was "far advanced tuberculosis" and that there was no connection between that pathology and his employment.

It is not within the province of a court to disturb findings of fact made by the Industrial Commission unless manifestly against the weight of the evidence. (*Donk Bros. Coal and Coke Co.* v. *Industrial Com.* 325 Ill. 193; *Green* v. *Industrial Com.* 337 id. 514.) Since we cannot say that the decision of the commission was without ample competent evidence to support it, the judgment of the circuit court must be reversed and the cause remanded to the circuit court, with instructions to confirm the decision of the Industrial Commission.

*Reversed and remanded, with directions.*