**BOWEN TRANSPORTS, Inc. v. UNITED STATES et al.**
Civ. No. 1152–D.

United States District Court,
E. D. Illinois.

Oct. 19, 1953.

Mack Stephenson and Earl S. Hodge, Springfield, Ill., V. W. McIntire, Danville, Ill., for plaintiff.

Axelrod, Goodman & Steiner, Chicago, Ill., for Decatur Cartage & Hayes Freight Lines, Inc.

Boyce, Guenther, Harrison & Moberly, Indianapolis, Ind., for Warsaw Trucking Co., Inc.

Clifford M. Raemer, U. S. Atty., Salem, Ill., James E. Kilday and Charles S. Sullivan, Jr., Sp. Assts. to Atty. Gen., Stanley N. Barnes, Asst. Atty. Gen., of counsel, for the United States.

Edward M. Reidy, Chief Counsel, David H. Dantzler, Bureau of Law, Interstate Commerce Commission, Wash-

ington, D. C., for Interstate Commerce Commission.

Before LINDLEY, Circuit Judge, WHAM, Chief Judge, and PLATT, District Judge.

PLATT, District Judge.

Plaintiff Bowen Transports, Inc. filed a complaint in this court on May 27, 1953 praying for an injunction to restrain the Interstate Commerce Commission from enforcing its orders denying to the plaintiff temporary authority for service.

The record discloses the following facts which are undisputed. The plaintiff filed on January 15, 1953 with the District Supervisor of the Bureau of Motor Carriers, at Springfield, Illinois, an application for temporary authority for service, in accordance with Section 210a(a), Interstate Commerce Act, 49 U.S.C.A. § 310a(a). Attached to the application was a letter of Ball Brothers Company, Incorporated, the shipper, setting forth its need for service and its claim that existing authorized carriers would not supply that service. The plaintiff had been engaged in the transportation of glass bottles for Ball Brothers from its Hillsboro, Illinois plant to Peoria, Illinois. Early in January Ball Brothers informed the plaintiff that it was closing the Hillsboro plant and the bottles would be delivered from the Muncie, Indiana plant. Plaintiff, desiring to continue the transportation of these bottles, filed the application for temporary authority. The District Supervisor notified some of the competing carriers who had permanent certificates of convenience, and letters protesting the granting of the application were received from Ringle Truck Lines, Inc., Warsaw Trucking Co., Inc., Interstate Motor Freight System, Decatur Cartage Company, Hayes Freight Lines, Inc., and Kain's Motor Service.[1] Each of these carriers set forth that it had a certificate of convenience to give service between Muncie and Peoria and had equipment available to carry the traffic. On February 5, 1953 the District Supervisor filed his report, together with the application, attached exhibits, and letters of protest, with the Commission. On February 20, 1953 a single Commissioner to whom the matter had been duly assigned for action issued an order stating that "there is immediate and urgent need for service * * * and that there is not available any carrier service capable of meeting such need", and granted the temporary authority for service upon compliance with the requirements, rules, and regulations of the Commission. On March 5, 1953 Warsaw Trucking Co., Inc. filed with the Commission a petition for reconsideration and revocation of the Commission's order of February 20, 1953. This petition alleged that the petitioner had sufficient equipment available to handle the shipper's traffic and had offered further service to Ball Brothers at Muncie, Indiana, but the service had not been utilized. It further alleged that there were at least three other competing truck lines who had the necessary authority and equipment to perform this transportation service for Ball Brothers, and that therefore, there was carrier service capable of meeting such need. On March 13, 1953 plaintiff filed in the alternative a motion to dismiss, or, a reply to the Warsaw petition, alleging that there was not available service to meet the emergency. Plaintiff received from the Commission on March 13, 1953 a telegram authorizing institution of service until September 8, 1953 unless earlier terminated, under order of February 20. The record was duly referred to Division 5, and after due consideration, an order was entered on May 12, 1953 granting the prayer of the petition filed by Warsaw and revoking the order entered February 20 "for the reason it has been established that there is ade-

---

1. These letters were in accordance with Rule 40 of the General Rules of Practice of the Commission, 49 U.S.C.A.

Appendix Following Section 1185 (49 CFR 1.40).

quate carrier service available to perform the transportation for which authority was granted." This order was made effective May 29, 1953. In the meantime plaintiff, having obtained the necessary licenses for its trucks and having moved part of its equipment to Muncie, Indiana, started its operation in April under the temporary authority. The complaint herein having been filed on May 27, 1953, plaintiff requested an extension of the effective date of the order of May 12 and the Commission extended the effective date to June 10, 1953. On June 3 plaintiff filed with the Commission a petition for reconsideration of the order of May 12. This petition reiterated the emergency and lack of adequate service available to Ball Brothers. A reply to this petition was filed by the intervenor herein, Hayes Freight Lines, Inc. Plaintiff again requested an extension of the effective date of the order of May 12, and it was postponed to July 10. On July 10 the petition for reconsideration by the plaintiff was again duly considered by Division 5 upon the whole record, and the order of May 12 was made effective "for the rea-

son that applicant has presented no facts not heretofore considered and has failed to establish that existing carrier service is incapable of performing the transportation." Plaintiff had filed a petition with the Commission for a permanent certificate of convenience on February 9.[2]

Plaintiff takes the position that the Commission in finally denying the temporary certificate of service acted arbitrarily and capriciously for the reasons, first, the authority once issued by the single Commissioner could not be revoked by the Commission acting through Division 5 except for good cause shown, as provided in Section 210a(a);[3] and second, the order denying the certificate was not in compliance with Section 9(b) of the Administrative Procedure Act, 5 U.S.C.A. § 1008(b).[4] On the other hand, the defendants and the intervenor Hayes Freight Lines, Inc. maintain that the temporary authority was not finally effective when issued by the single Commissioner and was subject to reconsideration and reversal by the Commission by virtue of the procedure provided by 49 U.S.C.A. § 17(6) and (7);[5] that the

2. Although Bowen's temporary authority was to expire on September 8, 1953, this case is not moot. Section 9(b) of the Administrative Procedure Act, 5 U.S.C.A. § 1008(b), provides in part:

"In any case in which the licensee has, in accordance with agency rules, made timely and sufficient application for a renewal or a new license, no license with reference to any activity of a continuing nature shall expire until such application shall have been finally determined by the agency."

And see 49 CFR 2.1 (Special Rules of Procedure) showing the applicability of the above section to the instant facts.

3. 49 U.S.C.A. "§ 310a. Temporary authority

"(a) To enable the provision of service for which there is an immediate and urgent need to a point or points or within a territory having no carrier service capable of meeting such need, the Commission may, in its discretion and without hearings or other proceedings, grant temporary authority for such service by a common carrier or a contract carrier by motor vehicle, as the case may be. Such temporary authority, unless

suspended or revoked for good cause, shall be valid for such time as the Commission shall specify, but for not more than an aggregate of one hundred and eighty days, and shall create no presumption that corresponding permanent authority will be granted thereafter."

4. 5 U.S.C.A. "§ 1008(b). Imposition of sanctions; determination of applications for licenses; suspension, revocation, and expiration of licenses
\* \* \* \* \*

"(b) \* \* \* Except in cases of willfulness or those in which public health, interest, or safety requires otherwise, no withdrawal, suspension, revocation, or annulment of any license shall be lawful unless, prior to the institution of agency proceedings therefor, facts or conduct which may warrant such action shall have been called to the attention of the licensee by the agency in writing and the licensee shall have been accorded opportunity to demonstrate or achieve compliance with all lawful requirements."

5. 49 U.S.C.A. § 17
"(6) After a[n] \* \* \* order \* \* \* shall have been made by

Commission acted accordingly and exercised its sound discretion.

In reconsidering and reversing the order of the single Commissioner, the Commission proceeded as provided by statute and the Rules of the Commission.[6] Bowen Transports, Inc., complying with Section 210a(a) of the Transportation Act, 49 U.S.C.A. Section 310a (a), applied for temporary authority for service between Muncie, Indiana and Peoria, Illinois. After the order by the single Commissioner granting the temporary authority Warsaw timely[7] filed a petition for reconsideration and revocation, as provided by Section 17(6), 49 U.S.C.A. The commission, acting through Division 5, did reconsider the order allowing the temporary authority and reversed the initial order issued by the single Commissioner. Division 5 had been designated as the reviewing body.[8] This reversal by Division 5 was authorized by Section 17(7), 49 U.S.C.A. Division 5 in fact functioned *de novo* with original jurisdiction in the reconsideration upon the record. It is an analogous procedure to an award by an arbitrator under the Illinois Compensation Act, Ill. Rev.St.1953, ch. 48, § 138.1 et seq., being reviewed by the Industrial Commission.[9] If the order of the single Commissioner had not been contested by a petition for reconsideration it could have become the final order of the Interstate Commerce Commission in a like manner as an award of an arbitrator. When the petition for reconsideration was filed by Warsaw, the reviewing body, Division 5 in this case, could reconsider the record with original jurisdiction, not being bound by the order of the single Commissioner.

A careful examination of Section 17 (6) and especially Section 17(7) serves to emphasize that the reconsideration by Division 5 was an original determination on the record with authority to reverse the order of the single Commissioner. Section 17(7) expressly states that if after reconsideration of an order of an individual commissioner it shall appear that the original order is in any respect unjust or unwarranted, the Commissioner or appellate division may reverse the same. "To reconsider" is defined in Webster's New International Dictionary, 1924 Edition, as "to consider again; to consider with a view to changing." Plaintiff must have recognized and so interpreted the procedure, as it too filed a petition for reconsidera-

* * * a division [or] an individual Commissioner * * *, any party thereto may at any time, subject to such limitations as may be established by the Commission as hereinafter authorized, make application for * * * reconsideration of the same * * *. Such applications shall be governed by such general rules as the Commission may establish. * * * [S]uch application shall be considered and acted upon by the Commission or referred to an appropriate appellate division for consideration and action. * * * [R]econsideration may be granted if sufficient reason therefore be made to appear; * * *."

49 U.S.C.A. § 17

"(7) If after * * * reconsideration of a[n] * * * order * * * of a division [or] an individual Commissioner * * * it shall appear that the original * * * order * * * is in any respect unjust or unwarranted, the Commission or appellate division may reverse, change, or modify the same accordingly. Any * * * order * * *

made after * * * reconsideration, reversing, changing, or modifying the original determination shall be subject to the same provisions with respect to * * * reconsideration as an original order."

6. See Section 17, 49 U.S.C.A., which authorizes the Commission to make general rules.

7. General Rules of Practice, 49 U.S.C.A. App. following section 1185.

"Rule 101. Petitions for rehearing, reargument, or reconsideration.—
* * * * *
"(e) Time for filing. Except for good cause shown, and upon leave granted, petitions under this rule must be filed within 30 days after the date of service of a decision or order granting an application in whole or in part, * * *."

8. 17 Fed.Reg. 5356 (June 12, 1952).

9. Rodriguez v. Industrial Comm., 371 Ill. 590 at page 593, 21 N.E.2d 741; Pocahontas Mining Co. v. Industrial Comm., 301 Ill. 462, at page 473, 134 N.E. 160.

tion and requested no hearing but relied upon the record. In a somewhat similar situation, in Hudson River Day Line v. United States, D.C., 85 F.Supp. 225, the court had under review an order issued by the Commissioner upon reconsideration of an order issued upon an application by a water carrier for temporary authority.[10] The first order of the Commission denied the temporary authority in part, but under review the denial was reversed and the temporary authority was granted. Judge Hand, speaking for a three judge court, said, 85 F.Supp. at page 227:

"There can be no doubt that the Commission had the power to change its decision on reconsideration irrespective of the additional data submitted to it, provided that its final conclusion was supported by substantial evidence in the record taken as a whole. (Citing cases)"

Judge Hand there recognized the jurisdiction of the Commission to reverse its prior order.

■■ In the instant case we do not have the necessity that the final conclusion of the Commission be supported by substantial evidence as required to support a finding in an order of the Commission granting or denying a permanent certificate of convenience, or where a formal hearing is held.[11] Section 210a (a) of the Transportation Act, 49 U.S.C.A. § 310a (a), provides that temporary authority of service may be granted in the discretion of the Commission without hearings or other proceedings.[12] While the record in this case was obtained in an informal manner in order to reach a decision with the speed contemplated by the statute, it is a record upon which the Commission was legally entitled to act and was made in accordance with proper procedure. The record before the single Commissioner included the plaintiff's application supported by Ball Brothers' letter, the exhibits, and the letters of protest. Upon the first reconsideration by Division 5 there was also the petition termed "for reconsideration and revocation" and the reply thereto by the plaintiff. Upon the second reconsideration there was in the record the plaintiff's petition for reconsideration and the reply thereto by Hayes Freight Lines, Inc. It is upon the entire record this court must determine whether the Commission acted arbitrarily or capriciously. *Schenley Distillers Corporation v. United States*, D.C., 50 F.Supp. 491, 496.

■ The Commission did not act arbitrarily or capriciously. It followed the proper procedure and based its action on the record. Section 210a (a) expressly places the granting of temporary authority in the discretion of the Commission. The discretion exercised by the Commission in reversing the prior order of the single Commissioner was analogous to the discretion exercised by a court of chancery in denying an application for a preliminary injunction on affi-

---

10. The statute there involved, 49 U.S.C.A. § 911, is identical in all respects to Section 210a (a) except that it relates to carriers by water rather than by motor vehicle.

11. Substantial evidence was discussed in Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, at pages 229 and 230, 59 S.Ct. 206, at page 217, 83 L.Ed. 126, as follows: "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. * * * "* * * Mere uncorroborated hearsay or rumor does not constitute substantial evidence."

Also see Willapoint Oysters v. Ewing, 9 Cir., 174 F.2d 676 and Carlay Co. v. Federal Trade Commission, 7 Cir., 153 F.2d 493. However these cases involve findings of agencies made after hearings and are therefore distinguishable from the instant case where the statute expressly states that no hearings are necessary and where no hearing was in fact held.

12. "[T]he statute conceives a summary disposition of the application." Alabama Great Southern R. Co. v. United States, D.C., 103 F.Supp. 223, at page 226; Kansas City & Leavenworth Transp. Co. v. United States, D.C., 51 F.Supp. 916, 920.

davit.[13] The record clearly showed a disputed question of fact as to the availability of carrier service capable of meeting the need of Ball Brothers for transportation of glass bottles from Muncie, Indiana to Peoria, Illinois. Inasmuch as the issue was disputed the Commission did not abuse its discretion or act unreasonably in denying the temporary authority.[14] No formal hearing being mandatory the finding of the Commission that there was adequate service available to perform the transportation was substantially supported on the record. Therefore, we can conclusively say that the Commission did not act arbitrarily or capriciously in finally denying the plaintiff's application for temporary authority.[15]

Plaintiff attempts to avail itself of the terminology of Warsaw's petition and the order of May 12 wherein the words "revocation" and "revoked" were used. However, this court must look through the terminology to ascertain what action was taken. Shannahan v. United States, D.C., 20 F.Supp. 1002, affirmed 303 U.S. 596, 58 S.Ct. 732, 82 L. Ed. 1039. The temporary certificate was not finally issued by the single Commissioner but was subject to being affirmed or reversed upon reconsideration. The good cause for revocation, as provided by Section 210a (a) is required to be proven only where the temporary authority for service has been granted by the final order of the Commission.

For the same reason we find that Section 9(b) of the Administrative Procedure Act is inapplicable wherein it provides: "Except in cases of willfulness or those in which public health, interest, or safety requires otherwise, no * * . * revocation * * * of any license shall be lawful unless, prior to the institution of agency proceedings therefor, facts or conduct which may warrant such action shall have been called to the attention of the licensee by the agency in writing and the licensee shall have been accorded opportunity to demonstrate or achieve compliance with all lawful requirements." Considering the temporary authority as a license under this provision, in view of the fact that it was not finally granted, the procedure outlined by this section would not apply.

From the foregoing analysis we conclude that the Commission followed the prescribed procedure, exercised its discretion neither arbitrarily nor capriciously, was supported in its findings substantially in the record, and violated no statutes. Therefore, the complaint must be dismissed. Findings of fact and conclusions of law are filed herewith. Order may be submitted.

---

13. See Schenley Distillers Corporation v. United States, supra, 50 F.Supp. at page 494, footnote 8.

14. Where the bill and answer in the suit present debatable questions, it is within the discretion of the court to refuse to grant a preliminary injunction on affidavits. Decorative Stone Co. v. Building Trades Council, 2 Cir., 13 F.2d 123.
"If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." Delno v. Market St. Ry. Co., 9 Cir., 124 F.2d 965, 967.

15. Kansas City & Leavenworth Transp. Co. v. United States, D.C., 51 F.Supp. 916, 920.
"What state of facts actually requires a certificate of * * * temporary authority must be left to the expert administrative tribunal, viz., the Commission."